IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OWENS TROPHIES, INC. f/k/a<br>R.S. OWENS AND COMPANY, INC., | )<br>)<br>) | |
| Plaintiff, | ) | No. 12 C 7670 |
| v. | )<br>) | Judge Robert W. Gettleman |
| BLUESTONE DESIGNS & CREATIONS, | )<br>)<br>) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Owens Trophies, Inc. filed a one-count fourth amended complaint against defendant Bluestone Designs & Creations alleging breach of contract. Defendant answered the complaint and filed a counterclaim seeking declaratory relief. Plaintiff filed a motion for summary judgment as to defendant's counterclaim, after which defendant filed a motion to voluntarily dismiss its counterclaim, which this court granted. Defendant then filed the instant motion seeking summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff filed a motion to strike portions of defendant's Local Rule 56.1 statement for violating Fed. R. Civ. P. 56 and L.R. 56.1. For the reasons discussed below, defendant's motion is granted and plaintiff's motion is denied.

# BACKGROUND[1]

Plaintiff is a design firm that began working with defendant, a manufacturer of trophies and awards, to produce various items beginning in 2004. In January 2007, plaintiff presented, and both parties signed, a Manufacturing and Supply Agreement ("the Contract"). The first recital of the Contract states that it " shall be made effective as of January 1, 2005." The term provision in the Contract, however, states that it "shall be effective for a period of five years from April 1, 2006 until April 1, 2011." Additionally, the Contract contained a clause that prohibited defendant from providing "to anyone ... other than [plaintiff], any Work which [plaintiff] has provided to [defendant] . . . ." This prohibition was to remain in place for two years after the termination or expiration of the Contract. One of the items defendant manufactured for plaintiff, the Emmy Award statue ("the Emmy Award"), is the subject of this lawsuit. Plaintiff had a "longstanding" arrangement to produce the Emmy Award for both the National Academy of Television Arts and Sciences and the Academy of Television Arts and Sciences ("the Academy"). Defendant, along with its factory partner in China, began producing the Emmy Award for plaintiff, who then sold it to the Academy, in 2005. In 2010, the Academy

---

[1] The following facts are, unless otherwise specified, undisputed and taken from the parties' Local Rule 56.1 statements and responses. The court acknowledges plaintiff's motion to strike paragraphs 12–15, 19, and 30 of defendant's Local Rule 56.1 statement because they either contain legal and factual arguments or do not properly and accurately cite the record. The court notes that many of plaintiff's responses also violate L.R. 56.1 by asserting legal and factual arguments. The court reminds counsel for both parties that the purpose of L.R. 56.1 statements is to "identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments." Warner Bros. Entm't, Inc. v. Synergex Corp., 2014 WL 518085, at *1 (N.D. Ill. February 10, 2012). Due to both parties' failure to follow L.R. 56.1, the court has devoted significant judicial resources to sifting through the record to ascertain those facts which are, in fact, material and disputed. Having done a considerable amount of work to do so, the court takes those facts that are supported by the record to decide the legal issue presented. Accordingly, plaintiff's motion is denied as moot.

notified plaintiff that a competitor had quoted the Academy a price well below plaintiff's price for producing the Emmy Award. Plaintiff matched the competitor's price and increased donations to the Academy, but the Academy subsequently advised plaintiff that some of its chapters would be acquiring the Emmy Award through another source. Plaintiff learned that the aforementioned competitor was this alternate source, and that defendant was producing the Emmy Award for this competitor. After learning this, plaintiff and defendant continued their relationship for approximately four years, at which point plaintiff filed the instant complaint alleging breach of contract against defendant.

## DISCUSSION

**I.   Legal Standard**

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some

3

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## II.    Analysis

Defendant argues that it is entitled to summary judgment for three reasons: (1) the Emmy Award was not within the scope of the Contract because it did not qualify as a "Work"; (2) assuming the Contract did apply to the Emmy Award, plaintiff is barred from recovery because it did not exercise either of the two breach of contract remedies provided for in the Contract; and (3) defendant was excused from performance because plaintiff materially breached the Contract first by refusing to accept a shipment of 500 Emmy Awards and by failing to live up to its payment obligations.[2] The court need address only the first argument.

According to defendant, it was not contractually obligated to sell the Emmy Award exclusively to plaintiff because it did not qualify as a "Work" under the Contract. The term "Work" is, unfortunately, not defined in the Contract. Consequently, defendant's argument that the Emmy Award was not a "Work" is premised on provisions in the Contract that spell out the process through which an item could become a "Work." The Contract contained the following provisions:

> (1) [Plaintiff] shall inquire with [defendant] as to its capability to manufacture, in accordance with all standards and conditions identified herein and any others that may be agreed hereinafter, [plaintiff]'s total requirements of a designated Work in the Territory during the term . . . . [Plaintiff] shall provide [defendant] with all materials and

---

[2] In its motion for summary judgment, defendant also argued that plaintiff waived its right to recovery through its conduct. Defendant withdrew this argument in its reply brief.

information that [plaintiff] believes are reasonable and necessary to evaluate [defendant]'s capability to manufacture and supply the designated Work in Accordance with this agreement.

(2) Within a reasonable period of time but no later than forty-five days thereafter, [defendant] shall provide [plaintiff] with a fully compliant prototype of the designated Work.

(3) In furtherance of [plaintiff]'s evaluation, [defendant] shall provide [plaintiff] with any additional information which [plaintiff], in its sole discretion, deems necessary to evaluate [defendant]'s capabilities with respect the Work [sic] under consideration, including but not limited to quality and price.

(4) In the event [plaintiff] determines, in its sole discretion, that [defendant] is capable of manufacturing and supplying [plaintiff] with its total requirements of the designated Work in the Territory at a competitive price in view of all market conditions, [plaintiff] shall notify [defendant] that it has been approved as the sole and exclusive manufacturer of the designated Work for the term of the Agreement.

(5) Upon receipt of such notice, [defendant] shall become obligated to manufacture for [plaintiff] and [plaintiff] will be obligated to purchase from [defendant], [plaintiff]'s total requirements of the designated Work in the Territory for the Term of the Agreement. [Defendant] shall manufacture and supply the Work to [plaintiff] in accordance with all mutually agreed upon standards and conditions.

According to defendant, by providing for such a specific process, the Contract excluded any designs that plaintiff submitted to defendant prior to the Contract term, which did not go through the specified process. Defendant also claims that it is undisputed that defendant presented its Emmy Award to plaintiff in 2004, before the Contract was signed in 2007, and that it did not go through the process required to qualify as a "Work." Although plaintiff disputes this, plaintiff's claim is belied by its own evidence.

Plaintiff contends that the exchanges between plaintiff and defendant that took place before they agreed that defendant would supply the Emmy Award were "precisely the quote/sample process envisioned by the contract." Plaintiff further argues that, although discussions between plaintiff and defendant regarding the Emmy Award commenced prior to

5

them signing the Contract, its production was governed by the Contract because defendant did not begin manufacturing the Emmy Award for plaintiff until after the Contract took effect. Plaintiff is mistaken.

First, plaintiff has failed to submit sufficient evidence that the production framework set out in the Contract, *which the plaintiff drafted*, was followed prior to defendant producing the Emmy Award. Second, and most importantly, what plaintiff's evidence does show is that defendant began producing, and plaintiff began purchasing, the Emmy Award at some point in 2005, at least four months *before* the term of the Contract commenced on April 1, 2006. In its Rule 56.1 Statement, plaintiff submitted an affidavit executed by its president stating that, "evaluation of [defendant]'s production capabilities continued into 2005, at which point [plaintiff] began placing orders for the Emmy." Plaintiff argues that "the contract language does not expressly state whether the contract applies to the Emmy award," which is true. The Contract does, however, unambiguously identify the term of the Contract: April 1, 2006 to April 1, 2011. Given the clarity of the term, and the parties' agreement that defendant's production of the Emmy Award pre-dates this term, it is unnecessary for the court to look to extrinsic evidence to determine the intent of the parties, as plaintiff urges.

Plaintiff acknowledges that, where the "court classifies the [Contract] as unambiguous, then the intention of the parties must necessarily be determined solely from the language used in the document." Interway, Inc. v. Alagna, 85 Ill. App. 3d 1094, 1098 (1st Dist. 1980). Recognizing this, plaintiff cautions that the Illinois Supreme Court disfavors strict contract interpretation where such an interpretation would defeat the intent of the parties. Schek v. Chicago Transit Auth., 42 Ill. 2d 362, 364 (1969). Plaintiff conveniently ignores the well-settled

principle of contract law that, "[i]n determining intent, we look to the unambiguous language of the contract, not to belated explanations of what the contracting parties meant to do." Pine Top Receivables of Illinois, LLC v. Banco De Seguros Del Estado, 2013 WL 2574596, at *4 (N.D. Ill. June 11, 2013), aff'd, 771 F.3d 980 (7th Cir. 2014). Plaintiff urges the court to find ambiguity where there is none so that it may rely on statements made nearly ten years after the fact to prove the intent of the parties when they entered into the Contract. The court declines to make such a leap. Plaintiff drafted the Contract. When it did so, plaintiff knew very well when it began (or didn't begin) purchasing Emmy Awards from defendant. If plaintiff intended for the Emmy Award to be included in the Contract, it would have made that explicit either by including it in the Contract or, at the very least, including a term that encompassed defendant's production of the Emmy Award. Because it did neither, the court concludes that the Emmy Award does not fall within the scope of the Contract.

Although plaintiff does not advance the argument, the court notes that it could be argued that the Contract is ambiguous due to the contradiction between the "effective date" in the recital and the date specified in the term provision. This argument, however, is foreclosed, again by a well-settled principle of contract law. Where recitals in a contract contradict express provisions, the latter provisions control and the court will resort to the recitals only "if necessary to determine the intention of the parties and the operative provisions of the agreement." Horton v. Chicago, 2016 WL 4945014, at *7 (N.D. Ill. Sept. 15, 2016). Because the operative provisions in the Contract are clear and the Contract itself is unambiguous, the court need not consider the recital.

## **CONCLUSION**

For the reasons described above, the court grants defendant's motion for summary judgment (Doc. 180) and denies plaintiff's motion to strike portions of defendant's statement of facts (Doc. 197).


**ENTER:** February 7, 2017

_____
**Robert W. Gettleman**
**United States District Judge**